IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JUSTIN J. BLISS,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN J. O'MALLEY,<br>Commissioner of Social Security,<br><br>Defendant. | Cause No. CV-24-021-GF-BMM<br><br>ORDER |

## INTRODUCTION

Justin Bliss ("Bliss") brings this action under 42 U.S.C. § 405(g), seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner"). (Doc. 2.) Bliss asks the Court to grant summary judgment on his social security disability insurance benefits and supplemental security income benefits or alternatively, to reverse and remand this action for further hearing by the ALJ. (*Id.* at 3-4.) The Commissioner opposes Bliss's motion and asks the Court to uphold the ALJ's decision. (Doc. 11.)

## JURISDICTION

The Court retains jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Bliss resides in Cascade County, Great Falls, Montana. 28 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). (Doc. 2 at 1–2.)

1

**PROCEDURAL BACKGROUND**

Bliss filed an application for Title II disability insurance benefits and Title XVI supplemental security income benefits on September 17, 2019. (Doc. 5 at 258–76.) Bliss's claims were denied upon initial review and on reconsideration. (*Id.* at 174–75; 179–82.) Bliss requested a reconsideration before an Administrative Law Judge ("ALJ"). (*Id.* at 204.) The ALJ issued an unfavorable decision on April 27, 2023. (*Id.* at 62–64.) The Appeals Council denied Bliss's request to review that decision on January 4, 2024. (*Id.* at 7–10.) This denial rendered the ALJ's decision the final decision of the Commissioner. *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018).

**STANDARD OF REVIEW**

The Court reviews the Commissioner's final decision under the substantial evidence standard. *See* 42 U.S.C. § 405(g). The decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. *See id.*; *See also Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 678 (9th Cir. 2005) (internal citations omitted). "Substantial evidence means more than a scintilla, but less than a preponderance." *Smolen*, 80 F.3d at 1279 (internal quotations omitted).

The Court must "consider the record as a whole, weighing both the evidence that supports and detracts from the [Commissioner's] conclusion." *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by substantial evidence in the record, but it may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).

## DISABILITY CRITERIA

A claimant is disabled for purposes of the Social Security Act if (1) the claimant "suffers from a 'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months'" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is unable to perform their previous work and also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (quoting 42 U.S.C. § 1382c(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001); 20 C.F.R. § 416.920. The five steps are as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step

3

two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), (e) 416.920(d), (e).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof in the first four steps. *Id.* at 953. The Commissioner bears the burden at step five. *Id.* at 953–54.

## FACTUAL BACKGROUND

### I. ALJ Determination

The ALJ determined at the first step that Bliss met the insured status requirements. (Doc. 5 at 67.) The ALJ further determined that Bliss had engaged in substantial gainful activity since his alleged onset date of January 30, 2018 (*Id.* at 68.) Bliss was employed from September 2018 to March 2019 and made over the monthly substantial gainful threshold amounts. (*Id.*) The ALJ determined that Bliss

4

had not engaged in substantial gainful activity over a continuous 12-month period. (*Id.*)

The ALJ determined at step two that Bliss suffered from the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, residual effects of right knee surgery, emphysema/chronic obstructive pulmonary disease, post-traumatic stress disorder, bipolar disorder, depressive disorder, and schizophrenia. (*Id.*) The ALJ determined that Bliss's gout, hypertension, obstructive sleep apnea, substance abuse, obesity, COVID-19, varicose veins, and venous insufficiency and were non-severe. (*Id.*)

The ALJ noted that Bliss's gout, sleep apnea, COVID-19, and hypertension did not interfere in any way that would impact Bliss's ability to work. (*Id.*) The ALJ also accounted for Bliss's treatment of his varicose veins and ability to elevate his legs during breaks. (*Id.* at 69.) The ALJ noted no limitations created by Bliss's obesity. (*Id.*)

The ALJ rejected Bliss's own subjective reporting that he had short term memory loss, head trauma and vertigo. The ALJ noted that none of Bliss's medical providers confirmed his self-reported head injuries and no formal diagnosis was made. (*Id.* at 70.)

At step three, the ALJ found that Bliss lacked an impairment or combination of impairments that met or medically equaled the severity described in the Listing

5

of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1, the Social Security regulations. (*Id.* at 70-71.)

At step four, the ALJ determined Bliss's residual functional capacity ("RFC"). (*Id.* at 71.) The ALJ followed a two-step process. The ALJ determined that Bliss's "medically determinable impairments could reasonably be expected to produce [Bliss's] symptoms." (*Id.* at 73.) The ALJ concluded, however, that Bliss's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ determined that Bliss possesses the RFC to perform light work except:

> the claimant can stand/walk four hours of an eight-hour day, sit for six hours of any eight hour day, occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally balance, stoop, kneel, and crouch, never crawl, frequently reach, handle, and finger, can never work with heavy machinery with fast moving parts or unprotected heights, can never work in environments with exposure to extreme cold or vibration, can occasionally work in environments with exposure to fumes, odors, dusts, gasses, and other respiratory irritants, is able to understand and remember simples tasks, can maintain concentration persistence or pace for simple tasks in two hour periods, is limited to simple work related decisions, can have occasional public and co-worker contact, can have occasional supervisory contact other than during periods of explanation (defined as the initial trainings period and/or explanation of changes to routine tasks, and is limited to job routines consistent with simple tasks, and must have the ability to elevate legs during scheduled breaks.

(*Id*. at 71-72)

(*Id.* at 32.) The ALJ determined that Bliss lacked the RFC to perform his past relevant work as a cook, kitchen manager, cook helper, and meat cutter. (*Id.* at 81.)

At step five, the ALJ found that Bliss proved capable of engaging in other work that existed in significant numbers in the national economy. (*Id.* at 47.) The vocational expert ("VE") identified the following jobs that exist for a person with Bliss's RFC, age, education, and work experience: routing clerk, small products assembler, mail clerk, or other similarly situated jobs. (*Id.* at 82.) Accordingly, the ALJ found Bliss "not disabled" under the relevant sections of the Social Security Act. (*Id.*)

## II.   Bliss's Position

Bliss contends that the ALJ failed to 1) support her decision that Bliss could sustain work related activities with substantial evidence from the record; 2) discuss Bliss's ability to perform sustained work activities in an ordinary work setting on a regular and continuing bases; and 3) create a residual functional capacity that contained a discussion and analysis of relevant evidence. (Doc. 9 at 19-20.) Bliss argues that the ALJ's alleged failure to consider certain findings in the medical record and other evidence renders her decision inadequate. (*Id.* at 20.) Bliss contends that the ALJ's determination that Bliss can sustain work related activities is not supported by the substantial evidence in the record and that Bliss should be determined disabled. (*Id.*)

## III. Commissioner's Position

The Commissioner asserts that the ALJ reasonably assessed the medical opinion evidence and the record and properly discounted Bliss's subjective reporting of his physical and mental impairments. (Doc. 11 at 2.) The Commissioner also argues that the ALJ adequately reasoned her decision based on the objective medical evidence and Bliss's subjective testimony. (*Id.* at 5-7.) The Commissioner asserts that the record as a whole supported the ALJ's determination of Bliss's residual function capacity and properly included Bliss's limited capacity to work. (*Id.* at 15–16.)

## DISCUSSION

### I. Whether the ALJ failed to properly evaluate the opinion of Dr. Martin.

Bliss raises issues with the ALJ's evaluation of the opinion of Dr. Martin. Consistency and supportability constitute the most important factors in evaluating the persuasiveness of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Consistency means the extent to which medical opinions or findings prove consistent with the evidence from other medical and nonmedical sources in the claim. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Supportability means the extent to which a medical source supports a medical opinion with objective medical evidence and explanations pertaining thereto. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

8

Dr. Martin assessed Bliss through physical testing on October 7, 2019. (Doc. 5 at 515–19.) Dr. Martin determined that Bliss could lift 15 pounds from floor to waist and 25 pounds from waist to crown and can occasionally carry 35 pounds. (*Id.* at 517.) Dr. Martin opined that Bliss could tolerate 3-4 hours per day of non-material handling tasks by alternating sitting and walking tasks and had to use knee braces to walk and a sturdy object to kneel. (*Id*. at 515-17.) Dr. Martin further opined that Bliss should avoid frequent lifting and carrying. (*Id.*) Frequent is defined as occurring one to two thirds of the day.

The ALJ found Dr. Martin's opinion partially persuasive. (*Id.* at 79.) The ALJ adequately evaluated the consistency and supportability of Dr. Martin's opinion with the other medical evidence in the record. The ALJ highlighted portions of Dr. Martin's opinion that Dr. Martin failed to consider. First, the ALJ observed that Dr. Martin's statements failed to consider Bliss's medical history prior to his alleged onset date. (*Id.*) The ALJ found that based on Bliss's past back and neck pain limited him in lifting, and he could not in fact lift 35 pounds either occasionally or frequently. The ALJ appropriately discounted the persuasiveness of the opinions expressed by Dr. Martin that she failed to consider, such as Bliss's prior x-rays, limited pulmonary function, and prior knee surgery. (Doc. 5 at 80.) The ALJ determined that Bliss's gain, strength, tone, and reflexes remained intact and

9

balanced Dr. Martin's opinion with the entire medical record. The ALJ accounted for Bliss's limitation in the residual functional capacity determination.

## II. Whether the ALJ failed to properly evaluate the opinion of Dr. Orvis.

Bliss contends that Dr. Orvis's opinion that Bliss is limited to "lifting and carrying up to 20 pounds and sitting, standing, walking, stair climbing, crouching and static forward flexed positions should be limited to occasional, and kneeling should be limited to 'rarely'" should have been considered by the ALJ. (Doc. 9 at 20.) Dr. Orvis performed physical testing on Bliss to determine that Bliss should be limited to occasionally lifting and carrying 20 pounds.

The ALJ considered Dr. Orvis's opinion and gave reasons why she did and did not agree with the opinion. The ALJ found Dr. Orvis's opinion partially persuasive. The ALJ cited the same previous medical history of Bliss that Dr. Orvis should have considered when making the assessment that Bliss can lift 20 pounds. For example, that Bliss had chronic back pain, prior x-rays showing degenerative changes and pulmonary limitations. (Doc. 5 at 80.) The ALJ properly considered Dr. Orvis's opinions and found that Bliss "is limited to no greater than occasionally lifting 20 pounds." (*Id*.) This conclusion is on par with the rest of the substantial medical evidence in the record. The ALJ balanced Dr. Orvis's opinion with the other medical evidence in the record and determined that Bliss cannot lift 20 pounds

10

frequently, but can occasionally lift 20 pounds, and can lift lower weights more frequently. (*Id.*)

### III. Whether the ALJ failed to properly evaluate other medical evaluations and reviewed the record for supportability and consistency.

Bliss contends that the ALJ failed to properly consider the evaluation by Dr. Barnwell for Bliss's disability consultation. (Doc. 9 at 21.) The ALJ found Dr. Barnwell's opinion partially persuasive. (Doc. 5 at 80.) The ALJ cited the same prior medical history as above and found that limiting Bliss's residual functional capacity adequately incorporated part of Dr. Barnwell's opinion that Bliss could "do light standing and walking and be allowed to take sit down breaks as needed to rest his back and knees as well as to catch his breath." (Doc. 5 at 722.) The ALJ properly considered Dr. Barnwell's opinion in light of the other medical evidence in the record and found it partially persuasive. The ALJ determined that the record did not support a need for additional breaks beyond what would be required in a normal workday. (*Id.* at 81.)

Bliss further argues that based on the opinions of the above physicians that no other objective evidence exists to the contrary. The ALJ's opinion and rational says otherwise. The ALJ adequately supported her decision by assessing physicians' opinion in light of the medical evidence within the record and Bliss's medical history. The ALJ weighed the medical evidence to determine the residual function

11

capacity and limited Bliss to light work. The ALJ determined that Bliss's statements alongside the objective medical evidence supported a finding that Bliss could not work jobs he previously had worked, but instead jobs that were available in the national economy. (*Id*. at 81-82.) The ALJ determined that Bliss could perform at a capacity of light work.

The ALJ further considered Bliss's alleged mental impairments against the objective medical evidence. The ALJ reviewed the medical records and found that Bliss's reported hallucinations were "distant" and had improved based on his medications. (Doc. 5 at 77.) The ALJ supported her decision by citing medical evaluations that reported Bliss as being "pleasant as always" and being engaged during appointments. The ALJ did not "cherry pick" the medical evidence as Bliss suggests and properly considered the entire medical record and explained her reasoning.

### IV. Whether the ALJ properly crafted a residual functional capacity based on the testimony of the vocational expert.

Substantial evidence in the record supports the ALJ residual functional capacity determination. The residual functional capacity is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the residual functional capacity assessment must include a discussion of the individual abilities on that basis." SSR

96-8p at *2. The ALJ can subsume the ability to sustain employment in the residual functional capacity. *Perez v. Barnhart*, 415 F. 3d 457, 466 (5th Cir. 2005). The ALJ properly used the medical record to craft the Bliss's residual functional capacity and supports her decision by substantial evidence. The ALJ determined that Bliss could "stand/walk four hours of an eight-hour day, sit for six hours of any eight-hour day, occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally balance, stoop, kneel, and crouch, never crawl, frequently reach, handle, and finger."

Bliss contends that the ALJ failed to ask questions to the vocational expert that allowed him to incorporate all of Bliss's limitations. (Doc. 9 at 32.) The ALJ posed questions that included Bliss's limitations such as his limited ability to stand for long periods and needing to elevate his legs during regularly scheduled breaks. The ALJ did not ask questions based on contentions that were absent in the record and properly included Bliss's limitations in the hypotheticals.

## CONCLUSION

The Court finds that substantial evidence exists in the record to support the ALJ's determination that certain medical opinions proved unpersuasive, partially persuasive, or persuasive. The Court also finds that substantial evidence exists to support the ALJ's balance of RFC limitation offered by each physician and struck a

13

proper balance between Bliss's subjective testimony and the objective medical evidence. The ALJ did not err in these determinations.

## ORDER

Accordingly, **IT IS ORDERED:**

1. The Commissioner's final decision denying Bliss's claim for Title II disability benefits and Title XVI supplemental security income benefits is **AFFIRMED.**

2. This case is **DISMISSED** with prejudice.

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 26th day of November, 2024.

Brian Morris, Chief District Judge
United State District Court